**Keith CHAMBLIN, Plaintiff,**

v.

**RELIANCE STANDARD LIFE INSURANCE COMPANY, et al. Defendants.**

**No. C 99–2599 JL.**

United States District Court, N.D. California.

Oct. 5, 2001.

Brian P. Evans, Brian P. Evans Law Offices, Walnut Creek, CA, for Keith Chamblin.

Bruce P. Loper, Lombardi, Loper & Conant, LLP, Oakland, CA, for Reliance Standard Life Ins. Co.

## ORDER RE DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S SECOND AND FOURTH CAUSES OF ACTION

LARSON, United States Magistrate Judge.

### INTRODUCTION

Defendant's Motion to Dismiss Plaintiff's second and fourth claims was heard on June 13, 2001. Brian P. Evans appeared on behalf of Plaintiff Keith Chamblin. Bruce P. Loper appeared on behalf of Defendant Reliance Standard Life Insurance Company.

Plaintiff's complaint alleges four causes of action: 1) Recovery of Policy Benefits, 2) Breach of Fiduciary Duty, 3) Declaratory Relief, and 4) Tortious Breach of Insurance Contract (bad faith).

IT IS HEREBY ORDERED that Defendant's Motion to Dismiss Plaintiff's second claim is denied. Defendant's motion to dismiss Plaintiff's fourth claim is granted.

The court finds that the Reliance Standard long-term disability policy was an insurance plan covered by the Employee Retirement Income Security Act (ERISA). 29 U.S.C. §§ 1001 et seq. ERISA includes a statutory provision for breach of fiduciary duty; therefore, Defendant's motion to dismiss Plaintiff's second cause of action is denied.

State common law causes of action arising from the improper processing of a claim made by a beneficiary of an ERISA benefit plan are preempted by federal law. Plaintiff's claims arising from delay in payment of his claim for disability benefits are claims for improper processing and therefore are preempted. Accordingly, Defendant's motion to dismiss Plaintiff's claim for tortious breach of an insurance contract is granted.

### FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff was employed by California Electric Service, which made available to its managerial employees a long-term group disability insurance policy from Defendant Reliance Standard Life Insurance ("Reliance"). In September 1997, while Plaintiff was on leave of absence for the birth of his child, he saw a doctor for a preexisting knee condition. Upon medical recommendation, he did not return to work at the end of his parental leave because his knee condition prevented him from performing his duties. Plaintiff filed a claim with Reliance for long-term disability benefits, and Reliance rejected his claim.

Plaintiff filed a Complaint on June 2, 1999 alleging four causes of action: 1) Recovery of Policy Benefits, 2) Breach of Fiduciary Duty, 3) Declaratory Relief, and 4) Tortious Breach of Insurance Contract (bad faith). On July 30, 1999, Defendant filed a Motion to Dismiss, claiming that all of Plaintiff's causes of action were preempted by ERISA. On September 9, 1999, Plaintiff filed a First Amended Complaint including the first and third of the above claims because he believed, based on facts he then knew, that the two state law claims were preempted by ERISA. After discovering more facts, on March 1, 2001, Plaintiff filed a Motion to Permit Filing of a Second Amended Complaint, incorporating all four of his original causes of action.

On April 16, 2001, the court granted Plaintiff's Motion to Permit Filing of the Second Amended Complaint, and on April 25, 2001, Plaintiff filed the Second Amended Complaint with all four causes of action. On May 7, 2001, Defendant Reliance filed its Motion to Dismiss Plaintiff's second and fourth claims as well as his claims for compensatory and punitive damages. Defendant's motion was heard on June 13, 2001.

## THE PARTIES' CONTENTIONS

Defendant argues that the Reliance long-term disability plan is governed exclusively by ERISA. Section 502 of ERISA authorizes a plan beneficiary to file an action to recover benefits. Defendant argues that Plaintiff's first and third claims, for Recovery of Benefits and Declaratory Relief, were not specifically pled under ERISA but were similar enough to claims allowable under § 502 of ERISA to be permitted. Defendant argues that Plaintiff's second and fourth claims, for Breach of Fiduciary Duty and Tortious Breach of an Insurance Contract, are state law claims preempted by § 514(a) of ERISA and that those two claims should be dismissed along with Plaintiff's accompanying claims for compensatory and punitive damages.

Plaintiff disputes Defendant's characterization of the Reliance policy and argues that the plan, in general, qualifies for the "safe harbor" exemption from ERISA. Plaintiff also argues that ERISA does not preempt his second and fourth claims because Congress intended to limit the reach of ERISA's preemption clause and that both federal and California law permit a cause of action for bad faith breach of an insurance contract.

## LEGAL ANALYSIS

Congress enacted ERISA in 1974 with the intent to "protect interstate commerce and the interests of participants in employee benefit plans and their beneficiaries." 29 U.S.C. § 1001(b). ERISA was Congress' response to the wide-scale expansion of private employer pension plans in the post-World War II era. Lawmakers sought to curb abuses in the administration and investment of the large volume of assets accumulated in the pension plans of their constituents. While the title of the Act conveys ERISA's original purpose, which was to regulate pension plans, ERISA applies as well to other employee benefits, including disability insurance provided by employers. 29 U.S.C. § 1002(1).

### 1. The Reliance Long-term Disability Policy is Covered by ERISA.

■■■ "For an employee welfare benefit plan or program to come within ERISA's sphere of influence, it must, among other things, be 'established or maintained' by an employer, an employee organization, or both." *Johnson v. Watts Regulator Co.,* 63 F.3d 1129, 1133 (1st Cir.1995).

To address the requirement that an ERISA plan be "established or maintained" by an employer, the Department of Labor created a four-pronged regulation to describe when a plan falls within the "safe harbor" exemption from ERISA coverage.

(1) The employer cannot contribute to the program.

(2) Employee participation must be completely voluntary.

(3) The employer may not endorse the program.

(4) The employer may not receive any consideration for its limited administrative involvement. *See* 29 C.F.R. § 2510.3–1(j).

To be exempt from ERISA, a plan must satisfy all four of the above prongs of the safe harbor provision. *Stuart v. UNUM Life Ins. Co.,* 217 F.3d 1145, 1153 (9th Cir.2000).

The Reliance long-term disability plan meets only two of the four prongs of the safe harbor exemption. The employer, California Electric Service, did not contribute to the plan; nor did it receive compensation for its limited administrative role, satisfying two of the prongs. However, the plan was not completely voluntary because the employer guaranteed Reliance a minimum participation rate of 75 percent of the company's managers at the time of contracting for the policy, and the company met that level of participation. The

employer also endorsed the Reliance plan by sending memos to encourage managerial employees to apply for and maintain coverage with Reliance; by negotiating the terms of the coverage with Reliance; and by identifying managers who were entitled to receive the coverage.

Because the Reliance plan was not completely voluntary, and because it was endorsed by the employer, the plan is not exempt from ERISA.

*2. Plaintiff's Claim for Breach of Fiduciary Duty is an ERISA Cause of Action.*

■ Defendant moved to dismiss Plaintiff's second claim for Breach of Fiduciary Duty, on grounds that ERISA preempts state law causes of action that are "related to" an ERISA-regulated employee benefit plan. In fact, breach of fiduciary duty is a cause of action provided by ERISA. Preemption is not at issue for this cause of action.

Under 29 U.S.C. § 1104(a), ERISA requires a fiduciary to discharge its duties "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use."

Because the Reliance long-term disability plan is covered by ERISA and because breach of fiduciary duty is a statutory provision of ERISA, Plaintiff's cause of action for breach of fiduciary duty is permissible. Defendant's Motion to Dismiss Plaintiff's second claim is denied.

*3. Whether Plaintiff's Claim for Bad Faith is Within the Savings Clause and Therefore Preempted by ERISA.*

Plaintiff's fourth cause of action is for Tortious Breach of Insurance Contract, a state law claim known as bad faith. ERISA preempts state law causes of action that are "related to" an ERISA-regulated employee benefit plan. *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 107

S.Ct. 1542, 95 L.Ed.2d 55 (1987). There is, however, an exception to ERISA preemption of state law claims. Section 514 of ERISA includes a "savings" clause which exempts from the scope of preemption state laws that "regulate insurance."

ERISA's § 514(a) is a broad preemption provision intended to displace all state law claims that "relate to" an employee benefit plan. *Metropolitan Life v. Massachusetts,* 471 U.S. at 739, 105 S.Ct. 2380. The preemption clause itself was intended to be limited by ERISA's savings clause at § 514(b)(2). A portion of the savings clause preserves any state law "which regulates insurance, banking, or securities." *Id.*

> [W]hile the general preemption clause broadly preempts state law, the savings clause appears broadly to preserve the States' lawmaking power over much of the same regulation. While Congress occasionally decides to return to the States what it has previously taken away, it does not normally do both at the same time.

*Metropolitan Life,* 471 U.S. at 740, 105 S.Ct. 2380.

The original intent of ERISA was to provide for federal regulation of pension plans; the Act was silent in regard to other employee benefit plans, including insurance. With the savings clause, Congress clearly intended that regulation of insurance remain within the power of the states.

Insurers with plans subject to ERISA are effectively immune from claims of bad faith, based on courts' interpretation of the *Pilot Life* case, in which the Supreme Court upheld ERISA preemption of any state law claim that "relates to" an employee benefit plan. The Solicitor General of the United States as *amicus curiae* argued that ERISA's civil enforcement remedy was exclusive. *Pilot Life Ins. Co.*

*v. Dedeaux,* 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987). The Court held that state law causes of action are preempted if they "relate to" an employee benefit plan but are exempted from preemption if they "regulate insurance." *Id.* It found the Mississippi bad faith law applicable more broadly.

In *Pilot Life,* the Court held that a claim under Mississippi's tortious breach of contract law was preempted by ERISA, because the state statute was a law of general application to all contracts and not limited to insurance. *Pilot Life* 481 U.S. at 51, 107 S.Ct. 1549. The Court held that ERISA provides an exclusive enforcement remedy: "the federal scheme would be completely undermined if ERISA plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA." *Id.* at 54, 107 S.Ct. 1549.

The Court's analysis in *Pilot Life* distinguished state laws "identified ... with the insurance industry" from laws of general application, finding that Mississippi bad faith laws providing for punitive damages covered any breach of contract action, not just insurance agreements. Accordingly, in *Pilot Life* the plaintiff's state law claim was preempted. *Id at* 50, 107 S.Ct. 1549.

In *UNUM Life Ins. Co. of America v. Ward* 526 U.S. 358, 119 S.Ct. 1380, 143 L.Ed.2d 462 (1999), the Supreme Court again addressed the question of whether a state law "regulates insurance." In that case, the insurer denied the plaintiff's claims for disability benefits because he filed after the deadline specified in the policy. Ward argued that under California's notice-prejudice rule, the insurer was required to show prejudice. The insurer asserted that ERISA preempted the notice-prejudice rule. At issue was whether the notice-prejudice rule was a state law "regulating insurance."

The Supreme Court held unanimously that the California rule reflects "policy concerns specific to the insurance industry" and did not constitute a "law of general application," thus distinguishing *Pilot Life.* The Court also found that application of the McCarran–Ferguson Act (15 U.S.C. § 1011 et seq.) compelled the same conclusion. The over-arching consideration is whether the law in question "fit[s] a common sense understanding of insurance regulation."

The three specific factors to be considered under the Act are whether: 1) the regulation has the effect of transferring or spreading a policyholder's risk; 2) the regulation is an integral part of the policy relationship between the insurer and the insured; and 3) the regulation is limited to entities within the insurance industry. *Ward,* 526 U.S. at 359, 119 S.Ct. 1380. In *Ward,* the Court explicitly rejected the defendant insurer's assertion that a state regulation must satisfy all three of these factors in order to "regulate insurance" under ERISA's savings clause. *Id.* at 373, 119 S.Ct. 1380. Instead, the Court identified the three factors as "considerations to be weighed." *Id.*

The purpose of the McCarran–Ferguson Act, enacted in 1945, is to ensure that federal laws not be construed to supersede state laws regulating the business of insurance. *Metropolitan Life Ins. Co. v. Massachusetts* 471 U.S. 724, 736, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985). Congress was concerned with protecting the power of states to regulate the "contract of insurance," or "the relationship between insurer and insured, the type of policy which could be issued, its reliability, interpretation, and enforcement—these were the core of the 'business of insurance.'" *Securities and Exchange Commission v. National Securities Inc.,* 393 U.S. 453, 460, 89 S.Ct. 564, 21 L.Ed.2d 668 (1969).

*4(a). Development of the Bad Faith Doctrine in California*

The California legislature has enacted a bad faith statute with reference to the insurance industry, Insurance Code § 790.03.

This statute provides that the following, *inter alia,* are violations of law:

Knowingly committing or performing with such frequency as to indicate a general business practice any of the following unfair claims settlement practices:

(1) Misrepresenting to claimants pertinent facts or insurance policy provisions relating to any coverages at issue.

(2) Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies.

(3) Failing to adopt and implement reasonable standards for the prompt investigation and processing of claims arising under insurance policies.

(4) Failing to affirm or deny coverage of claims within a reasonable time after proof of loss requirements have been completed and submitted by the insured.

(5) Not attempting in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear.

(6) Compelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by the insureds, when the insureds have made claims for amounts reasonably similar to the amounts ultimately recovered.

In addition, in a series of cases, the California Supreme Court has developed the concept that insurers are bound by an implied covenant of good faith and fair dealing with the insured. The breach of that covenant may constitute a tort (with the potential for punitive damages), and not solely a breach of contract for which only contract damages, such as the reinstatement of benefits and recovery of attorneys' fees, would be available.

California has a long history of treating suits for breach of contract in insurance cases differently from those in other industries. Whereas one may recover only contract damages in claims involving other types of businesses, California effectively regulates insurance by allowing plaintiffs to sue insurers for damages in both contract and tort.

In a 1958 case involving an insurance company's refusal to settle with third parties injured by its insured, the California Supreme Court stated in dictum that wrongful refusal to settle "has generally been treated as a tort." *Comunale v. Traders & General Ins. Co.,* 50 Cal.2d 654, 663, 328 P.2d 198 (1958).

In 1967, the Court relied on the dictum in *Comunale* to impose tort liability for financial losses and emotional distress resulting from wrongful refusal to settle a liability claim. *Crisci v. Security Ins. Co. of New Haven, Conn.,* 66 Cal.2d 425, 432, 58 Cal.Rptr. 13, 426 P.2d 173 (1967). With the dictum in *Comunale* and its application in *Crisci,* the Court applied two of the McCarran–Ferguson factors: that a law regulating insurance is integral to the insurer/insured relationship, and that such a law has the effect of spreading a policyholder's risk.

From cases in which insurers refused to settle with third parties, a California Court of Appeal expanded application of the tort remedy to "first party" cases where policyholders sued insurers for benefits due directly to them. In a 1970 case, the court held that the insurer had acted in bad faith by refusing to make disability payments and that, independent of the tort of intentional infliction of emotional distress, bad faith also constitutes a tortious interfer-

ence with an insured's property interest, for which damages may be recovered. *Fletcher v. Western National Life Ins. Co.,* 10 Cal.App.3d 376, 401, 89 Cal.Rptr. 78 (1970).

■ In 1973, the California Supreme Court imposed tort liability, above and beyond contract damages, on an insurer that wilfully and maliciously deprived a policyholder of benefits and, without proper cause, breached the implied covenant of good faith and fair dealing. *Gruenberg v. Aetna Ins. Co.,* 9 Cal.3d 566, 574, 108 Cal.Rptr. 480, 510 P.2d 1032 (1973). With its decision in *Gruenberg,* the California Supreme Court further solidified the law regulating insurance, consistent with all three of the descriptive McCarran–Ferguson factors.

Next in this line of cases, the California Supreme Court held that a tortious breach of the implied covenant of good faith could result in an award of punitive damages, but only if the insurer was found to have acted with oppression, fraud or malice. *Silberg v. California Life Ins. Co.,* 11 Cal.3d 452, 113 Cal.Rptr. 711, 521 P.2d 1103 (1974). The holding in this case was consistent with the establishment of a law regulating insurance; it set a limit on the definition of bad faith and restricted the award of punitive damages.

In a 1988 case, the California Supreme Court emphasized that a bad faith tort claim is explicitly reserved for insurance cases. In that case an employee sued his employer for wrongful discharge, alleging a tort cause of action. The Court affirmed the lower court's dismissal of the claim for tortious breach of the implied covenant of good faith, on the grounds that "the em-

ployment relationship is not sufficiently similar to that of insurer and insured to warrant judicial extension of tort remedies." *Foley v. Interactive Data Corp.,* 47 Cal.3d 654, 655, 254 Cal.Rptr. 211, 765 P.2d 373 (1988).

The court stated that the concept of a duty of good faith developed in contract law, and that the imposition of contract damages is determined by the nature of the breach of that duty. *Id.* at 684, 254 Cal.Rptr. 211, 765 P.2d 373. In industries other than insurance, one may recover only on a breach of contract theory:

> An exception to this general rule has developed in the context of insurance contracts where, for a variety of policy reasons, courts have held that breach of the implied covenant will provide the basis for an action in tort. California has a well-developed history addressing this exception.

*Id.*

The above line of cases establishes that recovery in tort for breach of the covenant of good faith in a contract is allowable only in regard to a contract of insurance, thus distinguishing the Mississippi statutes in *Pilot Life* and embracing the analysis of California law in *Ward.* It is significant for purposes of ERISA analysis under *Pilot Life* and *Ward* that in California the tort of bad faith applies only in insurance cases. Of the three McCarran–Ferguson Act factors which determine whether a law "regulates insurance," the third specifies that a state law has to be applied only to entities within the insurance industry. *Ward,* 526 U.S. at 359, 119 S.Ct. 1380.[1]

---

1. California court decisions have extended the reach of ERISA preemption to statutory causes of action under Insurance Code section 790.03. (*Commercial Life Ins. Co. v. Superior Court,* 47 Cal.3d 473, 475, 253 Cal. Rptr. 682, 764 P.2d 1059 (1988); *Rizzi v. Blue*

*Cross of So. California,* 206 Cal.App.3d 380, 382–391, 253 Cal.Rptr. 541. (1988)). Litigants in California courts are presently arguing that this puts California law in direct conflict with the Supreme Court decision in *Ward.*

The first factor calls for the state law or regulation to have the effect of transferring or spreading a policyholder's risk. *Id.* California's tort of bad faith transfers the risk because it makes an insurer liable for payment denials or delays that have an adverse effect on a policyholder.

In evaluating the second factor a court considers whether the state law or regulation is an integral part of the policy relationship between the insurer and the insured. *Id.* California's tort of bad faith is integral to the relationship between the insurer and the insured because it establishes a consequential remedy for the insured in the event that the insurer breaches the contractual relationship.

Thus, in compliance with the McCarran–Ferguson factors, California's law punishing bad faith for breach of an insurance contract action is law that distinctively "regulates insurance," and therefore could be interpreted as coming within the savings clause and avoiding ERISA preemption.

*4(b). ERISA Does Not Necessarily Preclude Additional State Law Remedies.*

The *Ward* case represents a sea change, not only on the preemption issue but also on the question of whether ERISA provides the exclusive remedies for plaintiff policy holders. Plaintiff Ward sought only to apply California's notice-prejudice rule in a claim on a plan regulated by ERISA. Ward did not seek a different state remedy and, therefore, the Supreme Court did not address the question of whether ERISA excludes other remedies. The Supreme Court stated that by saving from ERISA preemption a case involving a state law that regulates insurance, it was not reaching the issue of whether ERISA's civil enforcement provision, § 502(a) "provides the sole launching ground for an ERISA enforcement action." *Ward,* 526 U.S. at 377, 119 S.Ct. 1380.

With this statement, the Court called into question the assumption that the decision in *Pilot Life* eliminated the possibility of additional remedies beyond ERISA's enforcement provisions. The Court's holding in *Ward* is consistent with the legislative intent of ERISA's savings clause, which was to exempt from preemption laws that specifically regulate insurance. When Congress enacted ERISA in 1974, it made clear that it did not intend to encroach on the power of the states to regulate the insurance industry.

There is no equivalent indication that Congress intended ERISA to be the exclusive remedy for state law claims eligible for the savings clause. The savings clause provides that "nothing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance." 29 U.S.C. § 1144(b)(2).

*5. Other District Courts Have Exempted Bad Faith Claims from ERISA Preemption.*

Since *Ward,* in which the Supreme Court spared a California law regulating insurance from preemption by ERISA, district courts in a number of states have held that state law claims, including bad faith, based on laws that regulate insurance, are not preempted by ERISA.

In Oklahoma, a beneficiary of a decedent's life insurance policy sued the insurer in state court for breach of contract and bad faith delay in payment. The Court granted the defendant's motion to dismiss the breach of contract claim on grounds that it was preempted by ERISA, but denied the motion to dismiss the bad faith claim because Oklahoma's statutes regulating the insurance industry fell within the ERISA savings clause. *Lewis v. Aetna U.S. Healthcare, Inc.* 78 F.Supp.2d 1202 (N.D.Okla.1999).

In Alabama, a district court held that a beneficiary's cause of action under state law, alleging bad faith denial of an insurance claim was not preempted by ERISA. *Hill v. Blue Cross Blue Shield of Alabama*, 117 F.Supp.2d 1209 (N.D.Ala.2000). Another case held that Alabama's statute governing insurers' bad faith refusal to pay benefits was a law regulating insurance and, therefore, ERISA did not preempt a plaintiff's bad faith claim after his health insurer denied payment of benefits. *Gilbert v. Alta Health & Life Ins. Co.*, 122 F.Supp.2d 1267 (N.D.Ala.2000).

In the state of Washington, a plaintiff who was denied long-term disability insurance benefits after she was injured in a car accident sued, alleging a state common law claim. The district court denied the defendant insurance company's motion for partial summary judgment on grounds that Washington's common law rule of bad faith, codified in its insurance regulations and limited to the insurance industry, is a law that regulates insurance and is spared from preemption. *Norman v. Paul Revere Life Ins. Co.*, 2000 WL 33316829 (W.D.Wash.2000).

Two district court cases in Colorado have held also that the state's tort of bad faith breach of an insurance contract is a law regulating insurance and is, therefore, exempt from preemption. *Russann H. Hall v. UNUM Life Insurance Company of America*, Civil Action No. 97–M–1828 (D.Co., November 1, 1999) (Chief Judge Richard P. Matsch's Order Granting Motion for Leave to File Amended and Supplemental Complaint Adding Third Claim for Relief); *Colligan v. UNUM Life Ins. Co. of America*, 2001 WL 533742 (D.Colo. 2001).

These cases are similar to the one at bar in that plaintiffs sought to recover, in addition to the policy benefits that were due them, tort damages for bad faith breach of contract by insurers that had either denied or delayed payment of benefits under the insurance contract. Each of these states, by statute or by common law, has established the tort of bad faith as a cause of action exclusive to the breach of an insurance contract. Since *Ward*, federal district courts have held that ERISA does not preempt state law claims based on laws that regulate the insurance business.

Because California case law regulates insurance, and because California case law permits tort claims in insurance cases, Plaintiff's fourth claim, for Tortious Breach of Insurance Contract, could well be eligible for ERISA's savings clause and be spared from preemption. This view has been embraced by federal courts in other states.

*6. Controlling Precedent Requires that A Bad Faith Claim be Preempted.*

The U.S. Court of Appeals for the Ninth Circuit, which governs the rulings of this court, has held that a plaintiff who brings a cause of action for bad faith against an insurer who denies benefits under an ERISA benefit plan is bringing a cause of action for the improper processing of a claim, that such a cause of action is related to the benefit plan and that the claim is therefore preempted by ERISA. *Kanne v. Connecticut General Life Ins. Co.*, 867 F.2d 489 (9th Cir.1988).

In the *Kanne* case, the issue was medical coverage for the Kannes' son. They sought reimbursement for an airline fare to transport him from the Netherlands for surgery in the United States, and compensation for the emotional distress caused them by the delay in payments for the airline, physician and hospital bills. They prevailed on three causes at issue on appeal: two state common-law causes of action (breach of contract and breach of the duty of good faith and fair dealing) and one statutory cause of action under the California Insurance Code for failure to

pay claims reasonably promptly. The court of appeals withdrew the case from submission during the pendency of the Supreme Court decision in *Pilot Life v. Dedeaux*, 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987) and *Metropolitan Life Insurance Co. v. Taylor*, 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987). After these two cases were decided the court resubmitted the case and reversed the district court's conclusion that the claims were not preempted by ERISA. *Kanne v. Connecticut General Life Ins. Co.*, 819 F.2d 204 (9th Cir.1987). The court subsequently withdrew the opinion, on the Kannes' request for rehearing, to consider two issues: (1) whether the insurance policy in question was a plan governed by ERISA; and (2) whether Cal.Ins.Code § 790.03(h)(2) was preempted by ERISA.

The court in its final decision ruled that the answer to both questions was yes. The court applied the Supreme Court's rationale in the *Pilot Life* decision to conclude that since a state common law cause of action arising from the improper processing of a claim is preempted by ERISA, and the Kannes' claims arising from delay in payment were claims for improper processing, they were therefore preempted. *Kanne v. Connecticut General Life Ins. Co.*, 867 F.2d 489 (9th Cir.1988). The court explicitly rejected the Kannes' contention that § 790.3(h) was not preempted by ERISA because it is a law regulating insurance within the meaning of the "savings clause." The court held that the state statute did not supplement the ERISA civil enforcement provisions, and that the common law of contract interpretation is not a law that regulates insurance and is therefore not saved from preemption. *Id.* at 494. The court's basis for both of these conclusions was the holding in *Pilot Life* that Congress intended § 502(a) of ERISA to be the exclusive vehicle for ERISA-plan participants and beneficiaries asserting improper processing of a claim for benefits.

*Id.* at 494, citing *Pilot Life*, 107 S.Ct. at 1555.

The court of appeals has maintained this view even when the decision that state law could not provide a remedy leaves plaintiffs with no remedy at all. *Bast v. Prudential Ins. Co. of America*, 150 F.3d 1003 (9th Cir.1998). In that case, the husband and child of Rhonda Bast, who was covered by an ERISA health insurance plan, sued her health insurer for claims including breach of contract and breach of the duty of good faith. The insurer refused to authorize an autologous bone marrow transplant as treatment for breast cancer. The insurer delayed approving the procedure until her breast cancer had metastasized to her brain, making her ineligible for the bone marrow procedure. She soon died.

In its ruling, the court of appeals, citing its decision in the *Kanne* case, held that the family's state common law claims were preempted by ERISA, even though the Insurance Code of the State of Washington, the Basts' home state, establishes a statutory duty for all insurance companies to act in good faith. *Id.* at 1008. The court found that Prudential was acting as a benefit plan administrator, not as an insurance company or insurance provider, and that its conduct was covered by ERISA, so was not bound by the statute. *Id.* The court found that there were no causes of action available under ERISA for loss of Rhonda Bast's chance of survival, for out of pocket costs, loss of income, loss of consortium, and emotional distress. Consequently, since the state law claims were preempted by ERISA, and since ERISA offered no remedy, not even equitable relief under § 502(a)(3), damages were unavailable.

The court cited decisions by the 6th, 5th and 10th circuits in support of this conclusion. *Tolton v. American Biodyne, Inc.*,

48 F.3d 937, 943 (6th Cir.1995) (suit for wrongful death); *Corcoran v. United HealthCare, Inc.*, 965 F.2d 1321, 1333 (5th Cir.1992) (ERISA administrator denied a hospital stay for a woman during the final weeks of a high-risk pregnancy and the fetus died); *Cannon v. Group Health Serv. of Oklahoma, Inc.*, 77 F.3d 1270 (10th Cir.), *cert.denied*, 519 U.S. 816, 117 S.Ct. 66, 136 L.Ed.2d 27 (1996) (health insurer of leukemia patient denied her request for authorization of autologous bone marrow transplant, she appealed, decision was reversed by insurer and procedure was authorized but by then it was too late and the patient died.) The courts in all these cases held that ERISA preempted state law claims even if ERISA itself offered no remedy.

In a recent case, the court of appeals allowed a plaintiff to bring a state common law claim for invasion of privacy, finding it was not preempted by ERISA. The court distinguished the case of *Dishman v. Unum Life Ins. Co.*, 250 F.3d 1272 (9th Cir.2001) from the *Bast* case. In the *Dishman* case the insurance company had allegedly sent investigators to spy on plaintiff to confirm whether he was disabled. The court ruled that the plaintiff's cause of action for invasion of privacy was not preempted by ERISA because it was not intertwined with his claim for denial of benefits. The court held that the conduct complained of had only a tenuous relationship to the benefit plan, so the plaintiff's claim was not preempted. It reiterated, however, that state law claims are preempted where they would offer "an alternative enforcement mechanism" to ERISA. *Id.* at 1280–1281.

In the instant case, plaintiff Chamblin's fourth claim is for bad faith breach of the insurance contract by Reliance when it denied his claim for benefits. This claim is inextricably intertwined with his claim for benefits and therefore related to the benefit plan, which is an ERISA plan. This court concludes that it must, in light of controlling precedent, find that plaintiff's cause of action is related to the processing of a claim and is therefore wholly preempted by ERISA. Consequently, Defendant's motion to dismiss Plaintiff's fourth cause of action, for tortious breach of the insurance contract, must be granted. This is despite the line of California cases leading to a broader definition of laws regulating insurance, the possible conflict between California law and the Supreme Court's decision in the *Ward* case, and despite a growing line of cases in federal courts that ERISA does not preempt state law claims for bad faith denial of benefits by an insurance company administering an ERISA plan.

## CONCLUSION AND ORDER

Defendant's Motion to Dismiss Plaintiff's second claim, for Breach of Fiduciary Duty, is DENIED.

Defendant's Motion to Dismiss Plaintiff's fourth claim, for Tortious Breach of Insurance Contract (bad faith), is GRANTED.

This order resolves Document Number 43 on the court's docket.

IT IS SO ORDERED.